<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ABDULWALI NASIYRUDDIYN, | Civil Action No. 15-03701 (JLL) |
| Plaintiff, | |
| v. | **OPINION** |
| CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY, | |
| Defendant. | |

**LINARES**, District Judge.

This matter comes before the Court upon the appeal of Abdulwali Nasiyruddiyn ("Plaintiff") from the final decision of the Commissioner upholding the final determination by Administrative Law Judge ("ALJ") Elias Feuer denying Plaintiff's application for disability insurance benefits ("DIBs") and for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). The Court resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.l(f). The Court has reviewed the parties' submissions (ECF Nos. 10-12). For the following reasons, the Court affirms the final decision of the Commissioner upholding the final determination of the ALJ.

## I.  BACKGROUND[1]

The Court writes for the parties who are familiar with the facts and procedural history of the case. The Court therefore specifically addresses in the discussion below only those facts relevant to the issues raised on appeal.

---

[1] "R." refers to the Administrative Record, which uses continuous pagination and can be found at ECF No. 6.

## II.    STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "[i]t is less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Additionally, under the Act, disability must be established by objective medical evidence. To this end, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." 42 U.S.C. § 423(d)(5)(A). Instead, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

*Id.*; *see* 42 U.S.C. § 1382c(a)(3)(A). Factors to consider in determining how to weigh evidence from medical sources include: (1) the examining relationship; (2) the treatment relationship, including the length, frequency, nature, and extent of the treatment; (3) the supportability of the opinion; (4) its consistency with the record as a whole; and (5) the specialization of the individual giving the opinion. 20 C.F.R. § 404.1527(c).

The "substantial evidence standard is a deferential standard of review." *Jones*, 364 F.3d at 503. The ALJ is required to "set forth the reasons for his decision" and not merely make conclusory unexplained findings. *Burnett v. Comm'r of Soc. Sec*, 220 F.3d 112, 119 (3d Cir. 2000).

2

But, if the ALJ's decision is adequately explained and supported, the Court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). It does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. *Monsour Med. Ctr. V. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986)). Finally, the Third Circuit has made clear that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his [or her] analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505.

## III.    THE FIVE STEP PROCESS AND THE ALJ'S DECISION

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Pursuant to the Act, a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382(a)(1)(A)-(B) and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A person is disabled only if his physical or mental impairment(s) are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Third Circuit has summarized "the five step sequential evaluation for determining whether a claimant is under a disability, as set forth in 20 C.F.R. § 404.1520" as follows:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.

In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity [("RFC")] to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994).

If the claimant is unable to resume her former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled.

*Jones*, 364 F.3d at 118-19 (formatting and emphasis added). "The claimant bears the burden of proof for steps one, two, and four of this test. The Commissioner bears the burden of proof for the last step." *Sykes*, 228 F.3d at 263 (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987)). Neither party bears the burden of proof at step three. *Id.* at 263 n.2.

The ALJ engaged in the above five-step sequential evaluation and found: (Step 1) that Plaintiff had not been engaged in substantial gainful activity since August 1, 2007—the alleged onset date (R. at 14); (Step 2) that since his application date, Plaintiff has suffered from a severe lumbosacral (lower back) impairment but that "[t]hrough the claimant's date last insured of December 31, 2008, the record does not establish by objective medical evidence i.e., signs and laboratory findings that he has medically determinable severe back and mental impairments" (*id.*); (Step 3) that Plaintiff does not have an impairment or combination of impairments that equate to

the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*id.* at 16); (Step 4) that Plaintiff is able "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasional climbing of ramps and stairs, stooping crouching and crawling" (*id.* at 16); and (Step 5) that, given Plaintiff's RFC, he "is capable of performing past relevant work as a medical technician/assistant" (*id.* at 19). At step five, the ALJ heard testimony of a vocational expert. (*Id.* at 20.) The VE testified that Plaintiff's past work as a medical assistant is designated at skill level 6 and is light in its exertional level and that the medical technician job is designated at skill level 7 and is light in its exertional level. (*Id.*) For these reasons, the ALJ found Plaintiff not to be disabled and therefore not entitled to benefits under Titles II or XVI of the Act. (*Id.*) Plaintiff challenges the ALJ's step two and step three findings. (*See* Pl.'s Br. at 7-14).

## IV.   DISCUSSION

### A.  Step Two

Plaintiff argues that the ALJ erred at step two in finding that Plaintiff does not suffer from severe mental impairments. (Pl.'s Br. at 7-9.) More specifically, Plaintiff argues that the ALJ's determination that Plaintiff does not suffer from severe mental impairments is "contrary to the medical evidence in the record." (*Id.* at 9). Specifically, Plaintiff emphasizes that he has been diagnosed with depression by several doctors (*id.* at 8-9) and notes further that he testified that "on the days he is depressed" he experiences symptoms of that condition such as an inability to get out of bed, complete chores, or attend medical appointments. (*Id.*).

A diagnosis alone does not support that an impairment is severe. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 (3d Cir. 2007) ("In addition to the diagnoses, Salles was required to present evidence that these limitations *significantly* limited her ability to do basic work activities or impaired her capacity to cope with the mental demands of working.") (emphasis in original) (citing 20 C.F.R. §§ 404.1520(c), 404.1521(a); *Ramirez v. Barnhart*, 372 F.3d 546, 551 (3d Cir.

5

2004)). Instead, "[u]nder the applicable regulations, an impairment is severe only if it significantly limits the claimant's physical or mental ability to do 'basic work activities.'" *Salles*, 229 F. App'x at 144 (citing 20 C.F.R. § 404.1521). "Basic work activities," in turn, include: "[u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b) (paragraph numbers omitted). It is Plaintiff's burden to establish that an impairment is severe at step two. *Id.*

In evaluating the severity of a claimant's mental impairments, the ALJ considers the following "four broad areas of functioning: (1) activities of daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) deterioration or decompensation in work or work-like settings." (R. 15-16). *Ramirez*, 372 F.3d at 551 (citing 20 C.F.R. § 416.920a).

Here, the ALJ determined that Plaintiff suffered only mild limitations in the first three areas of functioning and no limitations with respect to the fourth area of functioning. As to the first area (activities of daily living), the ALJ noted that Plaintiff "lives alone and he does engage in daily activities such as household cleaning, doing laundry, preparing foods, shopping and traveling independently by walking or taking public transportation (Exhibits 3E, 8E)." With respect to the areas of social functioning and concentration, persistence, and pace, the ALJ determined that Plaintiff suffered mild limitations. (R. at 15). The ALJ noted that although Plaintiff prefers to stay in his home, he is capable of attending appointments. (*Id.*). The ALJ further explained that "[m]ental examination results reveal no evidence of psychosis, intact thought process, normal speech and it shows that he is cooperative (Exhibits 2F-3F, 7F, 13F)." (*Id.*). Similarly, the ALJ acknowledged Plaintiff's limitation with respect to his memory, but cited to clinical findings which demonstrated that he in fact maintained his concentration and memory. (*Id.*). Finally, the ALJ

6

found no limitations as to the fourth area of functioning because there is no evidence that Plaintiff has experienced any episodes of decompensation for an extended duration. (*Id.*).

Having reviewed the records relied upon by the ALJ in rendering his determination that Plaintiff's mental impairments were not severe, the Court finds that this determination is supported by substantial evidence. First, the ALJ's finding of only mild limitations in the area of daily activities is supported by his citation to two Function Reports that appear to have been completed by Plaintiff himself dated April 4, 2011 and August 29, 2011. Specifically, Plaintiff indicated in both reports that he is able to shop for food, prepare food, use public transportation, clean his apartment, and dress and bathe on his own. (R. 282-283, Exh. 3E; R. 306-313, Exh. 8E). The ALJ's findings as to the second and third functional areas—that is, social functioning and concentration, persistence and pace—are similarly supported by the record medical evidence. For example, Plaintiff's Mental Status Exam from March 7, 2011 indicates that his insight, social judgment, impulse control, and reliability as a historian were "fair" and that Plaintiff had "average" intelligence. (R. at 403, Exh 2F). Lastly, the Court holds that the ALJ's finding that Plaintiff has not suffered any episodes of decompensation is supported by Plaintiff's failure to offer any evidence of same.

In support of his argument that his mental impairments are severe, Plaintiff notes that his treating physician has "consistently noted a GAF score of 58, indicating moderate difficulty in occupational functioning." (Pl.'s Br. at 9).[2] However, a GAF score is not conclusive of the severity of a claimant's mental impairments, *see Rios v. Comm'r of Soc. Sec.*, 444 F. App'x 532, 535 (3d Cir. 2011), and in any event, as discussed above, the medical evidence in the record supports the ALJ's determination that Plaintiff's mental impairments were not severe.

---

[2] Plaintiff cites to "Tr. 555-557" in support of this statement; however, the Administrative Record ends at page 522.

Notably, even if the ALJ erred with respect to the mental impairments that he found to be non-severe, such error would be harmless. "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Commissioner of Social* Security, 347 F.3d 541, 546 (3d Cir. 2003). Here, having found Plaintiff's back condition to be severe, the ALJ engaged in the full five-step evaluation and accounted for any possible limitations related to Plaintiff's mental impairments in his RFC finding. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.") (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)).

In summary, the Court finds that the ALJ's determination that Plaintiff does not suffer from severe mental impairments is supported by substantial evidence and that even if the ALJ's finding of non-severe mental impairments was in error, such error would be harmless. Thus, the ALJ's analysis at step two does not require reversal or remand.

**B. Step Three**

Plaintiff argues that even assuming the ALJ's analysis of Plaintiff's mental impairments was correct, the ALJ erred in calculating his RFC.

The RFC refers to the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); SSR 96–8p, 1996 WL 374184, at *1–2. When determining the RFC of a claimant, the ALJ has a duty to consider all evidence before him, *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999), but the ALJ is only required to include a claimant's "credibly-established limitations." *Rutherford*, 399 F.3d at 554.

Here, "after careful consideration of the entire record," the ALJ concluded that Plaintiff "has the [RFC] to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except

occasional climbing of ramps and stairs, stooping, crouching and crawling." (R. at 16). The ALJ considered medical evidence with respect to Plaintiff's physical and mental impairments.

As to Plaintiff's complaints of back pain, the ALJ stated that "treating records show occasional acute episodes of back pain, which quickly resolve with pain medication (Exhibit 1F)." (*Id.* at 18). The ALJ further noted that Plaintiff "is not under regular orthopedic care and there is little in the way of clinical findings." (*Id.*). The ALJ acknowledged Plaintiff's testimony that he had been prescribed a cane by Dr. Ahmad in April 2013 and reviewed Dr. Ahmad's notes; however, the ALJ noted that "there is no indication that the claimant's back impairment progressed between the examination[s] with Dr. Mohit in June 2011 and when the cane was prescribed in April 2013." (*Id.*). Ultimately, the ALJ concluded that "[t]here is no evidence of radiculopathy or lower extremity abnormality to necessitate the use of a cane." (*Id.*).

With respect to Plaintiff's back pain, the ALJ discussed opinion evidence of treating physician, Dr. Edward Kalmar, who prepared an Examination Report for the State of New Jersey in which he ultimately determined that Plaintiff was unable to work on account of his ailments. (*Id.*). However, the ALJ accorded little weight to this opinion, explaining that Dr. Kalmar's determination that Plaintiff was incapable of working is based on different criteria than that applied by the Social Security Administration. (*Id.*). By comparison, the ALJ afforded great weight to the RFC determination calculated by "[S]tate agency medical consultants who did consider a severe degenerative disc back disorder in conjunction with objective evidence and other evidence and determined that the claimant is capable of a light [RFC] with occasional climbing ramps/stairs, balancing, stopping, kneeling, crouching and crawling (Exhibits 1A-2A, 5A-6A)." (*Id.* at 19).

The ALJ also considered Plaintiff's mental impairments when determining his RFC. (*Id.* at 16-19). At the outset, the ALJ explained that evidence does support Plaintiff's depressed mood.

(*Id.* at 17). Despite his depression, however, the ALJ noted that Plaintiff is capable of performing daily activities such as shopping, household repairs, and food preparation, without assistance. (*Id.* at 17-18). The ALJ credited GAF scores of 63 and 58-62 provided by Drs. Roy and Hammond, respectively. (*Id.* at 19). The ALJ acknowledged a lower GAF score of 50 provided by Dr. Lim in May 2011; however, the ALJ gave little weight to that score because it was based primarily on Plaintiff's subjective complaints which improved in June 2011 after Plaintiff was given medication. (*Id.*).

Plaintiff attacks the ALJ's RFC finding in three ways. First, Plaintiff argues that the ALJ failed to consider Plaintiff's depression in formulating his RFC and determining that he can work as a medical technician/assistant despite his mental impairments. (Pl.'s Br. at 9-10). Second, Plaintiff maintains that the ALJ erred in failing to properly weigh the medical opinion evidence regarding Plaintiff's use of a cane. (*Id.* at 10-12). Third, Plaintiff argues that the ALJ failed to properly weigh medical opinions of Plaintiff's treating doctors generally. (*Id.* at 12-14). The Court address each argument in turn.

The entirety of Plaintiff's first argument is as follows:

> [T]he ALJ failed to account for depression in formulating Mr. Nasiyr's [RFC] and determined that he can return to his past relevant work of medical technician/assistant. The vocational expert classified the medical assistant job with a skill level of 6 and the medical technician job with a skill level of 7. Given the high skill level of those jobs, even a mild limitation in concentration, persistence and pace would interfere with Mr. Nasiyr's ability to return to work in a highly skilled environment.

(*Id.* at 9-10).

At the outset, the Court notes that Plaintiff's contention that the ALJ failed to consider Plaintiff's depression when determining his RFC is entirely undermined by the ALJ's opinion itself, which includes a thorough discussion of Plaintiff's depression. (R. at 17-19). Indeed, the ALJ discussed GAF scores ranging from 50 to 63 as well as the findings and reports of three

10

doctors who opined on Plaintiff's mental state. (*Id.*). Moreover, Plaintiff has not directed the Court to any particular piece of medical evidence with respect to his mental impairments that he believes the ALJ overlooked. *See Cosby v. Comm'r of Soc. Sec.*, 231 F. App'x 140, 146 (3d Cir. 2007). Additionally, Plaintiff has not offered any support for his position that someone with mild limitations in three out of the four broad functional areas is incapable of performing a job rated with a skill level of 6 or 7. The Court, therefore, rejects these argument.

Plaintiff next argues that the ALJ erroneously disregarded Plaintiff's need to use a cane in rendering an RFC. (Pl.'s Br. at 10-12). Specifically, Plaintiff argues that "[d]espite Mr. Nasiyr's treating doctors' assessments and the objective medical evidence, the ALJ made his own medical assessment that 'there is no evidence of radiculopathy or lower extremity abnormality to necessitate the use of a cane." (*Id.* at 11). In short, Plaintiff accuses the ALJ of wrongfully replacing the opinions of Plaintiff's orthopedic doctor with his own judgments. (*Id.*).

While an ALJ must consider the opinions of treating physicians, "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity" where it is not well supported or there is contradictory evidence. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d. 2011) (alteration in original) (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)); 20 C.F.R. § 404.1527(c)(2); *see also Coleman v. Comm'r. of Soc. Sec. Admin.*, 494 Fed App'x 252, 254 (3d Cir. Sept. 5, 2012) ("Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason.") (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight

depending upon the extent to which supporting explanations are provided.");   20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

In considering the medical evidence relating to Plaintiff's need to use a cane, the ALJ stated as follows:

> In regard to the claimant's back pain, treating records show occasional acute episodes of back pain, which quickly resolve with pain medication (Exhibit 1F). He is not under regular orthopedic care and there is little in the way of clinical findings.  Dr. Mohit who performed an orthopedic consultative examination reported lumbosacral limitation of motion in flexion/extension and positive straight leg raises, but the claimant was neurologically intact, and he had full range of motion of the lower extremities (Exhibit 4F).   Although the claimant testified at the hearing that he has been using a cane since it was prescribed by Dr. Ahmad in April 2013 (Exhibit 11F), Dr. Mohit reported that the claimant ambulated without difficulty and without the need for an assistive device (Exhibit 4F). There is no indication that the claimant's back impairment progressed between the examination[s] with Dr. Mohit in June 2011 and when the cane was prescribed in April 2013. For instance, the results of a lumbosacral x-ray performed in June 2011 showed disc space narrowing at the L5-S1 level but no other abnormalities (Exhibit 4F, pg.3) and the results of a lumbosacral x-ray performed in April 2013 also showed narrowing of L5-S1 disc space without any other abnormalities (Exhibit 15F).   There is no evidence of radiculopathy or lower extremity abnormality to necessitate the use of a cane.

(R. at 18).

In support of his argument that the ALJ incorrectly found that there was no evidence supporting Plaintiff's need for a cane, Plaintiff first summarizes the report of his treating orthopedic surgeon, Dr. Ahmad.  (Pl.'s Br. at 13).  Plaintiff notes that Dr. Ahmad diagnosed Plaintiff with lumbar disc degeneration at L5-S1 and spinal arthritis. (*Id.* at 11).  Yet, a diagnosis alone does not render a claimant disabled. *See, e.g., Salles*, 229 F. App'x at 145.  Plaintiff further explains that Dr. Ahmad "noted that Mr. Nasiyr experienced pain and tingling which radiated into

his right leg . . . [and] that Mr. Nasiyr is unsteady on his feet at times and had difficulty standing."
(Pl.'s Br. at 11). As Defendant points out, however, "Dr. Ahmad's notes contain no examination
findings. Instead, he merely recorded Plaintiff's complaints and prescribed a cane." (Def.'s Br.
at 14; *see also* R. at 471-484, Exh. 11F; R. at 517-519, Exh.14F; R. at 520, Exh. 15F). Plaintiff
has not directed the Court to any specific findings of Dr. Ahmad (aside from his diagnoses and
reports of Plaintiff's subjective compaints) based on an examination of Plaintiff. (*See* Pl.'s Br. at
3, 10-11). In any event, the extent of the Dr. Ahmad's "findings" with respect to an April 2013
review of Plaintiff's MRI are as follows: "Spinal curve is normal. L5-S1 disk space is narrowed.
The vertebral body heights are preserved. The rest of the disk spaces show no narrowing. No
malalignment is identified. The adjacent soft tissues are unremarkable." (R. at 520, Exh. 15F). It
is apparent to the Court that the ALJ reviewed these findings (*see* R. at 18), and found same did
not show any worsening of condition from Plaintiff's June 2011 examination that would support
Plaintiff's need for a cane.

Plaintiff argues that Dr. Ahmad's decision to prescribe Plaintiff a cane is supported by a
November 11, 2013 MRI Report that shows a worsening of Plaintiff's back condition.[3] (Pl.'s Br.
at 11). However, the ALJ issued his decision on September 16, 2013—two months before the
November 2013 MRI Report on which Plaintiff relies. Therefore, the ALJ did not have the
November 2013 Report before him when issuing his September 2013 opinion.

Extensive case law holds that "[n]o statutory provision authorizes the district court to make
a decision on the substantial evidence standard based on new and material evidence never

---

[3] Specifically, Plaintiff explains that this report "shows multilevel degenerative disc disease through the lumbar spine
from L1-S1, right foraminal disc protrusion at L2-L3 which leads to moderate right sided foraminal narrowing disc
bulging and mild bilateral foraminal narrowing at L3-L4 through L5-S1, at L5-S1 there is superimposed right
paracentral disc protrusion." Plaintiff cites to "Tr.562-563" as the source of this MRI report. However, as previously
noted, to the extent Plaintiff appears to be citing to the Administrative Record, that Record stops at page 522. The
court notes that the Appeals Council received the November 11, 2013 MRI Report and added same to the record as
"Exhibit 16F." (R. 4, 520-522).

presented to the ALJ." *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). Thus, "[t]he correctness of [the ALJ's] decision depends on the evidence that was before him. He cannot be faulted for having failed to weigh evidence never presented to him." *Id.* at 592; *see also Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991) (citing *U.S. v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963) ("Because [ ] evidence was not before the ALJ, it cannot be used to argue that the ALJ's decision was not supported by 'substantial evidence.'").

Given the fact that the ALJ cannot disregard medical evidence that was not before him, the Court finds that the ALJ did not err in his analysis with respect to Plaintiff's use of a cane. Moreover, although a district court may remand a case where new evidence arises that has not been presented to the ALJ, it is the Plaintiff who bears the burden of demonstrating that remand for this reason is proper. *See* 42 U.S.C § 405(g); *Sizemore v. Sec'y of Health and Human Services*, 865 F.2d 709, 711 (6th Cir. 1988). In this case, however, Plaintiff has not argued that the Court should remand so that the ALJ may consider the November 2013 MRI Report. In fact, despite citing to that Report throughout his brief (Pl.'s Br. at 3, 11, 13), Plaintiff has failed to advise the Court that this Report was not actually before the ALJ. Accordingly, the Court will not remand this matter to the ALJ to reconsider this evidence.

Plaintiff also argues that the ALJ improperly accorded greater weight to the medical opinions of the State agency medical consultant than the medical opinion of Plaintiff's treating orthopedist, Dr. Kalmar. (Pl.'s Br. at 13-14). Specifically, Plaintiff argues that the opinions of his treating physicians should have been given controlling weight, particularly because the State agency's medical consultant did not review Plaintiff's MRI report and, unlike Plaintiff's treating physicians, did not actually examine Plaintiff. (*Id.*).

14

In explaining his rationale for crediting certain medical opinions over others, the

ALJ stated as follows:

> As for the opinion evidence, treating physician, Dr. Edward Kalmar of Internet Medical Group, completed an Examination Report for State of New Jersey, Workfare program, he listed back pain as primary diagnosis, and depression and he opined that the claimant was unable to work full-time. Dr. Kalmar indicated that the claimant has limitations in standing, walking, climbing, stooping, bending and lifting (Exhibit 12F, pgs. 18-19). I accord this assessment little weight as it is provided for a New Jersey State agency, which has different criteria that Social Security requirements. His opinion that the claimant is unable to work full-time, is a finding reserved to the Commissioner of the Social Security Administration. Dr. Kalmar did not quantify the assessed limitations in number of hours each function could be performed in an 8-hour workday. I have considered the claimant's back impairment and I have fashioned a residual functional capacity which does take into consideration climbing, stooping, bending, and lifting limitations caused by the back impairment.
>
> Great weight is accorded the residual functional capacity assessment provided by state agency medical consultants who did consider a severe degenerative disc back disorder in conjunction with objective evidence and other evidence and determined that the claimant is capable of a light residual functional capacity with occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching and crawling (Exhibits 1A-2A, 5A-6A). This assessment does take into consideration restriction in his ability to use his back for strenuous work activity. The evidence documents one level degenerative disc disease but no evidence of neurological deficits or radiculopathy. The claimant's gait is normal and he is able to perform household daily activities including cleaning his apartment, doing laundry, shopping, preparing food and traveling independently by walking and taking public transportation (Exhibits 3E, 8E).

The Court rejects Plaintiff's suggestion that the ALJ was required to give controlling

weight to the opinions of Plaintiff's treating doctors, as same is undermined by clear case law,

discussed above. (Pl.'s Br. at 14); *see, e.g., Coleman*, 494 Fed App'x at 254 ("Where, as here, the

opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the

ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong

reason."). To be clear, "[t]he ALJ—not treating or examining physicians or State agency

consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Social. Sec.*, 557 F.3d 356, 360-361 (3d Cir. 2011).

Further, the Court is not convinced that the ALJ improperly credited the opinions of the State's medical consultant because that consultant did not have the benefit of Plaintiff's April 2013 MRI Report.[4]  "[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision.  The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." *Chandler*, 667 F.3d at 361.  Accordingly, Social Security Regulations require an update to a State agency's report "only where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing.'" *Id.* (quoting SSR 96-6p, 1996 WL 374180, *4 (emphasis in *Chandler*)).  Here, the ALJ's opinion does not indicate that he construed the April 2013 MRI Report to be so significant as to require an updated medical opinion; rather, that ALJ determined that the report did not show that "claimant's back impairment [had] progressed" since his June 2011 visit with Dr. Mohit.  (R. at 18).[5]

In summary, the ALJ clearly explained his findings that there was no evidence in the record that required Plaintiff to use a cane and for crediting the opinions of the State agency's medical consultant over those of Dr. Kalmar.  Accordingly, the ALJ's step 3 analysis does not necessitate a reversal or remand.

## V.    CONCLUSION

---

[4] Presumably, Plaintiff also takes exception with the fact that the State agency medical consultant did not have the November 2013 MRI Report to review.  For the reasons discussed above, the Court need not address this concern.
[5] Notably, the State agency's medical consultant did review the June 2011 report of Dr. Mohit.  (*See* R. at 105, indicating receipt of the June 2011 Report).

For the foregoing reasons, the Court affirms the decision of the Commissioner upholding the ALJ's denial of Plaintiff's disability insurance benefits and supplemental security income.  An appropriate Order follows this Opinion.


DATED:  August _18_ , 2016


_____
JOSE L. LINARES
U.S.D.J.

17